UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APEX.AI, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>NEIL RICHARD LANGMEAD, an individual; VERIFA, INC., a Massachusetts corporation; and CODECLINIC LLC dba LATTIX, a Massachusetts limited liability company,<br><br>        Defendants. | Case No. 23-cv-02230-BLF<br><br>**ORDER GRANTING IN PART PLAINTIFF'S *EX PARTE* APPLICATION FOR TRO AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE; AND SETTING HEARING ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>[Re: ECF 6] |

Plaintiff Apex.AI, Inc. ("Apex.AI") filed the complaint in this action on May 8, 2023, asserting a federal trade secret claim against Defendants Neil Richard Langmead ("Langmead"), Verifa, Inc. ("Verifa"), and CodeClinic LLC dba Lattix ("CodeClinic") under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836. *See* Compl., ECF 1. Apex.AI also asserts state law claims for breach of contract, fraud, and unfair competition. *See id*.

Simultaneously with filing the complaint, Apex.AI filed an *ex parte* application seeking a temporary restraining order ("TRO") against Defendants and an order to show cause why a preliminary injunction should not issue. *See Ex Parte Applic.*, ECF 6. Apex.AI's *ex parte* application is GRANTED IN PART as set forth below.

Apex.AI SHALL file proof of service of process on Defendants by Saturday, May 13, 2023. Defendants are hereby ORDERED TO SHOW CAUSE, in writing and on or before May 17, 2023, why a preliminary injunction should not issue. A hearing on the motion for a preliminary injunction is set for May 22, 2023 at 9:00 a.m.

## I. BACKGROUND

Apex.AI has submitted the declaration of its Chief Technology Officer and Co-Founder, Dejan Pangercic, which establishes the following facts. *See generally* Pangercic Decl., ECF 6-4. Apex.AI, which is headquartered in Palo Alto, California, develops award-winning and safety-certified software tools for use in autonomous and software-defined vehicles. *See id.* ¶ 3. One of Apex.AI's products is Apex.OS, which is a bundle of two other products, Apex.Grace and Apex.Ida. *See id.* ¶¶ 8-11. Those products are extremely valuable because "they are safety-certified and are more efficient and developer-friendly than the handful of competing products." *Id.* ¶ 13. The products incorporate open-source software, but Apex.AI has developed and added numerous proprietary features and products that it has spent substantial time and resources developing. *See id.* ¶¶ 8-17. Apex.AI treats its products, the products' source code, and related technology as trade secrets and takes measures to ensure the confidentiality of those trade secrets. *See id.* ¶¶ 17-29.

In November 2019, Apex.AI entered into a Consulting Agreement with Verifa, a Massachusetts-based corporation. *See* Pangercic Decl. ¶ 34 & Ex. C. Langmead, a resident of England, is the principal of Verifa and signed the Consulting Agreement as "Owner" of Verifa. *See id.* Under the consulting agreement, Langmead worked on Apex.AI's functional safety team, which ensures that Apex.AI's products meet applicable safety requirements and can be safety-certified. *See* Pangercic Decl. ¶ 35. Langmead had access to virtually all of Apex.AI's software, source code, and other intellectual property. *See id.* ¶ 39. Langmead was specifically tasked with developing an automated process for "generating the certification artifacts that are necessary to prove that Apex.AI software meets the applicable functional safety requirements." *Id.* ¶ 36. Apex.AI paid Verifa $780,000 under the Consulting Agreement. *See id.* ¶ 43.

Langmead delivered proof of concept regarding the automated process but he never delivered a final version. *See* Pangercic Decl. ¶ 41. Apex.AI recently learned that Langmead is marketing the automated process to third parties through CodeClinic, another of his companies. *See id.* Langmead is the bank account holder for CodeClinic, which is located at the same Massachusetts address as Verifa. *See id.* ¶ 49. Langmead has placed Apex.AI's proprietary

source code, and associated safety certification artifacts, on CodeClinic's platform. *See id.* ¶ 68. Apex.AI has submitted the declaration of its Head of Information Technology, Dmytro Tutynin, who captured lists of files and directories present on Langmead's Apex.AI-issued laptop. *See* Tutynin ¶¶ 3-6, ECF 6-10. Those files indicate that Langmead has exploited Apex.AI's trade secrets and proprietary information for his own benefit. *See id.*; *see also* Pangercic Decl. ¶¶ 54-68.

Apex.AI has not terminated the Consulting Agreement or taken steps to retrieve its company laptop from Langmead, because Apex.AI does not want to alert him that they have discovered his wrongdoing. *See* Pangercic Decl. ¶ 70. Instead, Apex.AI. has filed the present lawsuit against Langmead, Verifa, and CodeClinic, and seeks a TRO without notice to them.

## II.  LEGAL STANDARD

The Court may issue a TRO without notice to the adverse party only if: "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). In addition, this district's Civil Local Rules require that a TRO application be accompanied by "[a] declaration by counsel certifying that notice has been provided to the opposing party, or explaining why such notice could not be provided." Civ. L.R. 65-1(a)(5).

Courts use the same standard for issuing a temporary restraining order as that for issuing a preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) ("[T]he legal standards applicable to TROs and preliminary injunctions are substantially identical." (internal quotation marks and citation omitted)). An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in

1  the public interest." *Id.* at 20. "[I]f a plaintiff can only show that there are serious questions going
2  to the merits – a lesser showing than likelihood of success on the merits – then a preliminary
3  injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the
4  other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942
5  (9th Cir. 2014) (internal quotation marks and citations omitted).

**III.  DISCUSSION**

Apex.AI asks the Court to issue an order: (1) enjoining Defendants from using or disclosing Apex.AI's trade secrets or confidential information; (2) enjoining Defendants from destroying evidence; (3) requiring Defendants to return all Apex.AI trade secrets, confidential information, property, and data; (4) allowing expedited discovery; and (5) allowing Apex.AI to serve Defendant Langmead via email and following up with Federal Express. Apex.AI also requests that the Court require Defendants to show cause why a preliminary injunction should not issue.

The Court has no difficulty finding that Apex.AI has satisfied the requirements for issuance of a TRO *ex parte*. However, it is the Court's view that Apex.AI has not made a sufficient showing on its request for expedited discovery. The Court therefore will grant the *ex parte* application in part, as discussed below.

**A.  Notice**

Under the legal standard set forth above, Apex.AI may obtain a TRO without notice to Defendants only by presenting specific facts in an affidavit or verified complaint showing that "immediate and irreparable injury, loss, or damage" otherwise would result. Fed. R. Civ. P. 65(b)(1). The movant's attorney must certify in writing the reasons why notice should not be required. *See id.*; Civ. L.R. 65-1(a)(5).

Apex.AI has satisfied these requirements. The declarations of Dejan Pangercic and Dmytro Tutynin, discussed above, establish that Langmead and Verifa were granted access to Apex.AI's trade secrets and other proprietary information in order to perform work under the Consulting Agreement between Apex.AI and Verifa; that Langmead disclosed Apex.AI's trade secrets and proprietary information to CodeClinic; that Langmead is attempting to use Apex.AI's

4

trade secrets and proprietary information for his own benefit; and that Langmead is still in possession of an Apex-AI-issued laptop. Dmytro Tutynin states in his declaration that Langmead could erase files and activity history on his Apex-AI-issued laptop in a way that would make it difficult to recover them. *See* Tutynin Decl. ¶ 7. Apex.AI's counsel, Melinda Morton, has submitted a declaration stating that Apex.AI is at a critical point in its business and that disclosure of its trade secrets could result in the loss of opportunities to make substantial profits. *See* Morton Decl. ¶ 2.e, ECF 6-2. Apex.AI is concerned not only with disclosure but also with Langmead's potential destruction of evidence and attempts to cover up his conduct. *See id.* ¶2.

On this record, the Court is satisfied that issuance of a TRO without notice is appropriate.

**B.  Analysis**

**1.  Likelihood of Success on the Merits**

The Court begins its analysis by considering Apex.AI's showing on the first *Winter* factor, likelihood of success on the merits. Apex.AI's application for TRO is based primarily on its claim for misappropriation of trade secrets under DTSA. To prevail on a DTSA claim, an aggrieved plaintiff must plead and prove three elements: (1) plaintiff owned a trade secret; (2) defendant acquired, disclosed, or used the protected secret through improper means; and (3) defendant caused damage to plaintiff." *Beatport v. SoundCloud*, No. CV 19-847 MRW, 2019 WL 6330680, at *1 (C.D. Cal. Apr. 11, 2019). "Actual or threatened misappropriation may be enjoined." *Farmers Ins. Exch. v. Steele Ins. Agency, Inc.*, No. 2:13-CV-00784-MCE, 2013 WL 2151553, at *9 (E.D. Cal. May 16, 2013). "A 'trade secret' is information that (1) derives independent economic value, actual or potential, from not being generally known to, or readily ascertainable by other people who can obtain economic value from its disclosure or use and (2) is subject to reasonable efforts to maintain its secrecy." *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 845-46 (N.D. Cal. 2019) (citing 18 U.S.C. § 1839(3)).

Apex.AI has presented evidence that it owns trade secrets comprising Apex.AI products, the products' source code, and related technology, and that it takes measures to ensure the confidentiality of those trade secrets. *See* Pangercic Decl. ¶¶ 17-29. Apex.AI also has presented evidence that its trade secrets derive independent economic value from not being generally known

or ascertainable by others, including competitors. *See id.* ¶¶ 30-33. The record suggests that Langmead, Verifa, and CodeClinic have used and disclosed Apex.AI's trade secrets in a manner not authorized by Apex.AI by, among other things, marketing those trade secrets to prospective customers for their own benefit. *See id.* ¶¶ 55, 61, 63-67. Defendants' disclosure of Apex.AI's trade secrets has damaged it and will continue to damage it, because disclosure would destroy the value of Apex.AI's products and deprive it of opportunities to market them. *See id.* ¶ 33.

In light of this strong showing of likelihood of success on its DTSA claim, the Court need not address likelihood of success on Apex.AI's state law claims.

### 2. Irreparable Harm

Apex.AI also has established that it is likely to suffer irreparable harm if a TRO is not granted. "[C]ourts in this district have presumed that Plaintiff will suffer irreparable harm if its proprietary information is misappropriated." *Comet Techs. United States of Am. Inc. v. Beuerman*, No. 18-CV-01441-LHK, 2018 WL 1990226, at *5 (N.D. Cal. Mar. 15, 2018) (internal quotation marks, citation, and brackets omitted) (collecting cases). Moreover, Apex.AI has presented evidence that it hired Langmead and Verifa develop a particular automated process, paid $780,000 for development of that automated process and related services, and now face the prospect of that automated process being sold to third parties. *See* Pangercic Decl. ¶¶ 36-43.

Apex.AI has made a strong showing on irreparable harm.

### 3. Balance of Equities

The balance of equities favors Apex.AI's motion for TRO. Based on the record evidence, it appears that Defendants have misappropriated Apex.AI's trade secrets and are attempting to market them for their own benefit. Defendants do not appear to have any legitimate competing interest in the trade secrets.

### 4. Public Interest

Finally, courts in this district have found that the public interest is served when an injunction is issued to prevent the misappropriation of trade secrets. *See Pyro Spectaculars N., Inc. v. Souza*, 861 F. Supp. 2d 1079, 1093 (E.D. Cal. 2012) ("[A]n injunction specifically focused on preventing misuse of [the plaintiff's] trade secrets to solicit [the plaintiff's] customers would

serve the policy of protecting trade secrets while simultaneously allowing lawful competition.").

**C.  Security**

Federal Rule of Civil Procedure 65(c) provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Ninth Circuit has "recognized that Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (internal quotation marks and citation omitted) (italics in original). "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id*.

The Court finds that there is no realistic likelihood of harm to Defendants because a TRO would simply enjoin them from disclosing or using information taken from Apex.AI. *See Comet*, No. 18-CV-01441-LHK, 2018 WL 1990226, at *6 ("[T]here is no likelihood of harm because the TRO would simply enjoin Defendant from doing something Defendant never had a right to do in the first place.")

Accordingly, the Court finds it appropriate to issue injunctive relief without requiring Apex.AI to provide security.

**D.  Scope of Relief**

**1.  Injunctive Relief**

For the reasons discussed above, the Court is satisfied that Apex.AI is entitled to prohibitory injunctive relief enjoining Defendants from using or disclosing Apex.AI's trade secrets or confidential information. The Court also is satisfied that Apex.AI is entitled to prohibitory injunctive relief enjoining Defendants from destroying evidence.

Apex.AI also seeks mandatory injunctive relief compelling Defendants to return all Apex.AI trade secrets, confidential information, property, and data. "In general, mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages."

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878 (9th Cir. 2009) (internal quotation marks and citation omitted). Applying this standard, the Ninth Circuit has held that a plaintiff seeking a mandatory injunction must establish that "the law and facts *clearly favor* her position, not simply that she is likely to succeed." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (emphasis in original). Here, Apex.AI has made a strong case that the law and facts clearly favor its position, and that it will suffer irreparable injury if Defendants are permitted to continue using and marketing Apex.AI's trade secrets. Accordingly, the Court finds that the more demanding standard for issuance of a mandatory injunction is satisfied here.

The application for a temporary restraining order is GRANTED.

### 2. Expedited Discovery

"Courts may order expedited discovery on a showing of good cause." *WeRide*, 379 F. Supp. 3d at 854; *see also Comet*, 2018 WL 1990226, at *7. "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *WeRide*, 379 F. Supp. 3d at 854.

In the present case, the Court would consider allowing expedited discovery given evidence that Defendants have engaged in egregious conduct. However, Apex.AI has not offered a realistic discovery plan, but rather has requested what appears to be wholesale discovery including a deposition of Langmead and extensive forensic discovery (including cloning) of Defendants' devices. In addition, because this TRO is issued *ex parte*, the Court must hold a hearing within 14 days of issuance. *See* Fed. R. Civ. P. 65(b)(2). There is simply no time for completion of any discovery before the hearing.

The request for expedited discovery is DENIED WITHOUT PREJUDICE. In the event the parties agree to extend the date for hearing on preliminary injunction, Apex.AI may submit a trimmed down discovery plan.

### 3. Service of Process

Plaintiff alleges that Defendant Langmead is a citizen of the United Kingdom and requests leave to serve Langmead by email, to be followed by Federal Express delivery to his home in Bath, England. Given the urgency of Apex.AI's application for TRO, and on the particular facts

8

of this case as discussed above, the Court finds the request for alternate service of process to be well-taken. *See Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002). In *Rio*, the Ninth Circuit made clear that alternate service on a foreign individual may be utilized under Federal Rule of Civil Procedure 4(f)(3) without first attempting service by other means in cases of "urgency." *See id.* Such service "must comport with constitutional notions of due process and must not be prohibited by international agreement." *Id.* The Court finds that service on Langmead by email comports with constitutional notions of due process in light of Apex.AI's evidence that it has used Langmead's email address to communicate with him frequently and recently. The Court is unaware of any international agreement that would prohibit the requested alternate service.

Apex.AI's request to serve Langmead by alternate service is GRANTED.

## IV.   ORDER

(1)   Apex.AI's *ex parte* application is GRANTED IN PART, as follows:

    (a)   Defendants Neil Langmead, Verifa, Inc., and CodeClinic LLC dba Lattix are enjoined from accessing any and all of Apex.AI's files;

    (b)   Defendants Neil Langmead, Verifa, Inc., and CodeClinic LLC dba Lattix are enjoined from using any of Apex.AI's trade secrets or confidential information and from disclosing them to any person or entity other than Apex.AI;

    (c)   Defendants Neil Langmead, Verifa, Inc., and CodeClinic LLC dba Lattix are enjoined from altering, destroying, or disposing of any evidence or other materials, in any form, relating to this action and the issues raised herein, including, without limitation, all electronic media, cloud storage, and all copies of any and all documents, media, and/or other materials containing, identifying, describing, reflecting, or referencing Apex.AI's confidential or trade secret information, as well as any and all documents, data and information that was obtained by Defendants from Apex.AI by virtue of their consulting relationship with Apex.AI, including all current or archived

1                                  media, emails, chats, texts, documents, electronic logs, metadata, storage and directories; and

         (d)     Defendants Neil Langmead, Verifa, Inc., and CodeClinic LLC dba Lattix shall return all Apex.AI trade secrets, confidential information, property and data, whether in paper form or in an electronic medium, including Defendant Langmead's Apex.AI-issued laptop, the Apex.AI source code stored on CodeClinic's GitLab instance, and any Apex.AI source code stored in any other location outside of Apex.AI's files.

(2)     Apex.AI MAY serve Defendant Neil Langmead by alternate service via email followed by Federal Express delivery to his home in Bath, England.

(3)     Apex.AI SHALL file proof of service of process on all Defendants by Saturday, May 13, 2023.

(4)     Defendants are hereby ORDERED TO SHOW CAUSE, in writing and on or before May 17, 2023, why a preliminary injunction should not issue.

(5)     A hearing on Apex.AI's motion for a preliminary injunction is set for May 22, 2023 at 9:00 a.m.

(6)     Apex.AI's request for expedited discovery is DENIED WITHOUT PREJUDICE.

Dated: May 10, 2023

*[signature]*
BETH LABSON FREEMAN
United States District Judge