Case 5:23-cv-02230-BLF   Document 76   Filed 01/18/24   Page 1 of 8

Melinda M. Morton (Bar No. 209373)
E-mail: mindy.morton@procopio.com
Jacob K. Poorman (Bar No. 262261)
E-mail: jacob.poorman@procopio.com
PROCOPIO, CORY, HARGREAVES &
    SAVITCH LLP
3000 El Camino Real
Five Palo Alto Square, Suite 400
Palo Alto, CA 94306
Telephone: 650.645.9000
Facsimile: 619.235.0398

Attorneys for Plaintiff APEX.AI, INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| APEX.AI, INC.,<br><br>Plaintiff,<br><br>v.<br><br>NEIL RICHARD LANGMEAD, AN INDIVIDUAL; VERIFA, INC., A MASSACHUSETTS CORPORATION; CODECLINIC LLC DBA LATTIX, A MASSACHUSETTS LIMITED LIABILITY COMPANY, AND DOES 1-20,<br><br>Defendants. | Case No. 5:23-cv-02230<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO FILE COUNTERCLAIMS MATURING/ACQUIRED AFTER PLEADING PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 13(E)**<br><br>Date:  May 2, 2024<br>Time:  9:00 a.m.<br>Dept:  Courtroom 3, Fifth Floor<br>Judge:  Hon. Beth Labson Freeman |
|---|---|

Plaintiff Apex.AI, Inc. ("Apex.AI") respectfully submits this Opposition to Defendants Neil Richard Langmead, Verifa, Inc. ("Verifa"), and CodeClinic LLC's ("CodeClinic") (collectively "Defendants") Motion for Leave to File Counterclaims (the "Motion for Leave").

**I.     INTRODUCTION**

Defendants seek leave to file five counterclaims, the first four of which are based on communications that are absolutely immune from liability under California's litigation privilege. Cal. Civ. Code § 47(b). Defendants' Motion for Leave as to these counterclaims should therefore be

1

CASE NO. 5:23-CV-02230

denied.

Defendants' first four proposed counterclaims – for intentional interference with prospective economic advantage, tortious interference with contractual relations, defamation, unfair competition and business practices – are explicitly based on communications by Apex.AI's in-house counsel to third-parties that are Defendants' alleged customers and/or business partners, regarding this litigation and the stipulated preliminary injunction, in an effort to protect Apex.AI's trade secrets and confidential information. ECF No. 73-1. Such communications fall squarely under California's litigation privilege, which protects communications that are made in connection with a judicial proceeding, by interested parties, to achieve the objects of the litigation. *See* Cal. Civil Code § 47(b). The privilege is absolute, meaning that even knowingly false statements that are subject to the litigation privilege are immune from liability.

The communications alleged in the proposed counterclaims therefore cannot form the basis for any cause of action.  Permitting Defendants leave to file these counterclaims – which are explicitly based on the alleged communications – would therefore be futile. Nor would leave to amend promote judicial economy, as Defendants contend.  The alleged communications are also protected by the anti-SLAPP statute, and if Defendants file counterclaims based upon them, Apex.AI will move to strike pursuant to that statue. Filing these counterclaims, therefore, will not promote judicial economy, but will give rise to additional, unnecessary motion practice.

This Court should therefore deny the Motion for Leave.

**II.     BACKGROUND**

Plaintiff Apex.AI designs safety-certified software for mobility systems and, in particular, automobiles. Defendant Neil Langmead, a programmer, and his company, Defendant Verifa, were consultants to Apex.AI. Their Consulting Agreement with Apex.AI provided, *inter alia*, that they were obligated to maintain the confidentiality of Apex.AI's trade secrets and confidential information, were required to refrain from any work directly related to Apex.AI's business, and that their work for Apex.AI would belong to Apex.AI. One of their tasks for Apex.AI was to develop a pipeline for the automatic generation of safety certification artifacts for software, which

artifacts necessary to the critical process of obtaining safety certification for that software. A number of applications, including automobiles, require software that is safety-certified.

Apex.AI brought this suit for trade secret misappropriation, breach of contract, fraud and unfair competition after, among other things: (1) Apex.AI found a presentation on behalf of Defendant CodeClinic on Defendant Langmead's Apex.AI-issued laptop that contained Apex.AI trade Secrets, (2) Defendant Langmead gave a presentation to Apex.AI, on behalf of CodeClinic, regarding the "'Lattix' certification pipeline" which reflected Apex.AI trade secrets, (3) Apex.AI discovered that Defendant Langmead had placed Apex.AI source code in CodeClinic's GitLab instance (GitLab is a remote platform used primarily for the development and storage of source code), and (4) Apex.AI found that Defendant Langmead had engaged in self-dealing by causing Apex.AI to make payments to companies with whom he was affiliated without disclosing his relationship with them, including Defendant CodeClinic. Based on this (and other) evidence demonstrating that Defendants had misappropriated Apex.AI's trade secrets, misused its confidential information and passed Apex.AI's technology off as their own, this Court issued a Temporary Restraining Order, *ex parte*, against Defendants.

After the Court issued the Temporary Restraining Order, Defendants stipulated to a Preliminary Injunction. In that Injunction, Defendants agreed, in pertinent part, that:

- They would refrain from using any of Apex.AI's trade secrets or confidential information;
- They would return all return Apex.AI all trade secrets, confidential information, documents and data;
- The trade secrets set forth in the Preliminary Injunction were adequately described (although Defendants did not "admit that *some* constitute valid trade secrets");
- Apex.AI could take early discovery; and
- Apex.AI could conduct a forensic examination of Defendants' devices that contain Apex.AI trade secrets or confidential information and a forensic examination of CodeClinic's GitLab instance.

*See* Stipulation and Order Granting Stipulated Injunction (ECF No. 25) (emphasis added).

Following the issuance of the Injunction, Defendant Langmead turned his Apex.AI-issued

laptop, personal laptop and several USB drives over to Apex.AI for inspection and Apex.AI served narrow discovery requests on Defendants principally intended to protect its intellectual property, identify what Defendants had done with that intellectual property and minimize the harm resulting from Defendants' misconduct. Declaration of Jacob Kevin Poorman in Support of Opposition to Motion for Leave ("Poorman Dec."), ¶ 2. In response to an interrogatory asking him to identify all accounts where he had stored Apex.AI confidential information, Mr. Langmead identified: (1) CodeClinic's "GitLab instance", (2) his CodeClinic email accounts, (3) his CodeClinic Microsoft Teams account, and (4) a Verifa Google Drive. Poorman Dec., Ex. A at Interrogatory No. 6.

Also as a part of its efforts to protect its intellectual property and prevent further loss and harm arising from Defendants' wrongdoing, Apex.AI's in-house counsel communicated with certain entities affiliated with Defendants to ensure that those entities were apprised of the Preliminary Injunction and that they were not using any of Apex.AI intellectual property.  These communications, according to Defendants' Motion and the allegations in their Proposed Counterclaims:  attached the Preliminary Injunction, specifically referenced this lawsuit and quoted from the Injunction, and requested that the recipient take steps to ensure that they did not have Apex.AI trade secrets or confidential information and to preserve all relevant evidence. ECF No. 73-1 at ¶¶ 15-17. Defendants attach an exemplar email from Apex.AI's in-house counsel to their Proposed Counterclaims, which is set forth below:

> Apex.AI possesses information that Defendants may have disclosed Apex.AI Trade Secrets and confidential information to QA Systems and its entities in various jurisdictions, and that Defendants may have used Apex.AI Trade Secrets and confidential information in their work on behalf of QA Systems. Please be advised that QA Systems may not use or disclose any Apex.AI Trade Secrets or confidential information and that QA Systems may not "alter[], destroy[], or dispos[e] of any evidence or other materials, in any form, relating to" Apex.AI's suit against Defendants "and the issues raised" therein, "including, without limitation, all electronic media, cloud storage, and all copies of any and all documents, media, and/or other materials containing, identifying, describing, reflecting, or referencing Apex.AI's confidential or Trade Secret information, as well as any and all documents, data and information that was obtained by Defendants from Apex.AI by virtue of their consulting relationship with Apex.AI, including all current or archived media, emails, chats, texts, documents, electronic logs, metadata, storage and directories."

ECF No. 73-1 at ¶ 15, *id.* at Ex. 1. Defendants allege that Apex.AI's letters to other of Defendants' customers were materially similar. *Id.* at ¶¶ 20, 25, 33.

Based on these alleged communications, Defendants seek leave to file counterclaims for intentional interference with prospective economic advantage, tortious interference with contractual relations, defamation and unfair competition under California Business and Professions Code Section 17200, *et seq.*[1]

### III. LEGAL STANDARD

Under Rule 13(e), "'[t]he court may permit a party [to] file a supplemental pleading asserting a counterclaim that matured or was acquired by the party after serving an earlier pleading.'" *Phan v. Transamerica Premier Life Ins. Co.*, No. 20-CV-03665-BLF, 2023 WL 6048779, at *2 (N.D. Cal. Sept. 14, 2023). "When a party seeks to file a counterclaim under Rule 13(e), district courts in the Ninth Circuit have applied the same standard as that of amendment under Rule 15." *Id.* (collecting cases). "The factors considered when determining whether to grant leave to amend include: (1) bad faith on the part of the movant; (2) undue delay; (3) prejudice to the opposing party; and (4) futility of the proposed amendment." *Id.* (citation and internal quotation marks omitted).

### IV. ARGUMENT

#### a. Defendants' Counterclaims are Barred by the California Litigation Privilege

California's litigation privilege, codified in Civil Code § 47(b), shields any "communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action."[2] *Action Apartment Ass'n, Inc. v. City of Santa Monica*, 163 P.3d 89, 95 (Cal. 2007) (quoting *Silberg v. Anderson*, 50 Cal.3d 205, 212 (1990)). The privilege "applies without regard to" the intent of the party making the communication and is thus "characterized as 'absolute'." *B-K Lighting, Inc. v. Vision3 Lighting*, 2008 WL 11286080, *6

---

[1] Defendants' fifth proposed counterclaim, for breach of the Consulting Agreement, is not a subject of this Opposition, although that claim too is infirm because Defendant Langmead has already admitted to materially breaching the Agreement by disclosing Apex.AI confidential information.
[2] California's litigation privilege applies to state tort claims asserted in federal court. *See, e.g., Fitbit, Inc. v. Laguna 2, LLC*, 2018 WL 306724, *2 (N.D. Cal. 2018).

(2008) (quoting *Brown v. Kennard*, 94 Cal.App.4th 40, 45 (2001)) (litigation privilege applies without regard to "malice or evil motives"). The "scope of the litigation privilege covers '*any* communication, not just a publication, having "some relation" to a judicial proceeding, and to *all* torts other than malicious prosecution." *Pathak v. U.S.*, No. CV 09-8287-GHK, 2010 WL 11596724, at *3 (C.D. Cal. March 16, 2010) (emphasis in original). The privilege "is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards." *Rusheen v. Cohen*, 37 Cal.4th 1048, 1057 (2006). "Further," the litigation privilege "applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved." *Silberg v. Anderson*, 50 Cal.3d 205, 212 (1990). "Any doubt about whether the privilege applies is resolved in favor of applying it." *Kashian v. Harriman*, 98 Cal.App.4th 892, 913 (2002).

Here the proposed counterclaims are all based on communications from Plaintiff Apex.AI to third parties during the course of the present litigation seeking to enforce the Injunction, protect Apex.AI's trade secrets and confidential information at issue in the present litigation, and prevent spoliation of evidence relevant to this litigation. *See* ECF No. 73 at pg. 3 lines 20-23, pg. 5 lines 6-7; *see also* ECF No. 73-1 at ¶¶ 12, 15, 17, 21, 25, 30, 33, 46, 51, 56, 57, 62. These alleged communications are protected by the litigation privilege, and meet all four of its elements.

First, the alleged communications were made "in . . . judicial proceedings" because they were made in the context of the instant proceedings. *See Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, No. C 12–2582 CW, 2013 WL 368365, at **10-11 (N.D. Cal. Jan. 29, 2013) (extending the litigation privilege to plaintiff's email notifying customers of a preliminary injunction against defendant); *Sparrow LLC v. Lora*, 2014 WL 12573525, at *6 (C.D. Cal. 2014) (finding communications intended to protect respondent's intellectual property rights including cease and desist letters and other communication to third-parties who used or had access to the intellectual property at issue constituted protected communications); *see also Silberg*, 50 Cal.3d at 212.  Second, there can be no dispute that these communications were made "by litigants," because they were made by Plaintiff Apex.AI's in-

house counsel.

Third and fourth, the communications were made to "achieve the objects of th[is] litigation" and are "connected to" this litigation because they were objectively an effort to protect Apex.AI's intellectual property and limit, to the extent possible, the harm caused by Defendants' misconduct. *See also O'Keefe v. Kompa*, 84 Cal.App.4th 130, 135 (2000) (conduct intended to achieve object of litigation where it is "logically and legally related to the realization of a litigation objective"). Indeed, the Injunction provides that it only enjoins those acting in concert with Defendants to the extent they have actual notice of the Preliminary Injunction. Providing notice of the Preliminary Injunction to interested parties was, therefore, not merely intended to achieve the objects of this ligation, it was necessary to achieve those objects. Courts have routinely held that such communications are protected by the litigation privilege. *See, e.g., Ubiquiti Networks, Inc.*, 2013 WL 368365, at \*\*10-11; *Sharper Image Corp. v. Target Corp.*, 425 F. Supp. 2d 1056, 1079 (N.D. Cal. 2006) (communications to retailers advising them of patent lawsuit against defendant and retailers' potential liability were protected by the litigation privilege)*; Beyond Blond Productions, LLC v. Heldman*, 2021 WL 4859972, at \*\*5-6 (C.D. Cal. 2021) (finding prelitigation communications protecting intellectual property such as copyrights and trademarks protected under the California litigation privilege); *Fitbit*, 2018 WL 306724, \*9 (N.D. Cal. 2018) (finding the litigation privilege to apply to and protect letters sent by plaintiff in order to protect its brand, product, and copyright).

In *Sharper Image*, for example, the court found the privilege to apply to communications by the plaintiff to retailers regarding plaintiff's patent suit against defendants and the retailers' potential liability, because the plaintiff's suit could "have significantly disrupted recipients' business arrangements with Defendants," and a finding of infringement "would have significantly increased the legal liability of the letter recipients." 425 F. Supp. 2d at 1079. Similarly, in *Ubiquiti Networks,* the plaintiff's email to its customers regarding its lawsuit and injunction against the defendant was protected by the litigation privilege because "the outcome of Plaintiff's lawsuit implicated [the recipients'] business prospects and, potentially, their legal liability." 2013 WL 368365, at \*11. Here, the recipients of the alleged communications – who Defendants allege to be their customers and/or

business partners – would have been equally interested in the alleged communications.

The communications that constitute the basis for Defendants' first through fourth proposed counterclaims are therefore immune from liability under the litigation privilege. These proposed counterclaims, therefore, are devoid of merit, and granting Defendants leave to file them would be futile.

### b. Granting Defendants' Leave to File Counterclaims Would Result in Unnecessary Motion Practice and Would Not Promote Judicial Economy

Defendants argue that granting the Motion for Leave "will serve the goals of judicial efficiency." ECF No. 73 at pg. 5 lines 17-19. Not so. In addition to being immune under the litigation privilege, the communications that constitute the basis for the counterclaims are protected by California's anti-SLAPP statute. *See, e.g.*, *Kashian*, 98 Cal.App.4th at 926–927 (finding that plaintiff cannot demonstrate probability of prevailing on defamation claim under the anti-SLAPP statute where underlying communication protected by litigation privilege). Thus, if the Motion for Leave is granted, it will lead to further unnecessary motion practice, delay and the needless expenditure of judicial resources to strike what are essentially frivolous claims.

### V. CONCLUSION

For the foregoing reasons, Plaintiff Apex.AI respectfully requests that this Court deny Defendants' Motion for Leave to File Counterclaims as to Defendants' first through fourth proposed counterclaims.

DATED: January 18, 2024

PROCOPIO, CORY, HARGREAVES & SAVITCH LLP

By: /s/ Melinda M. Morton
Melinda M. Morton
Jacob K. Poorman

Attorneys for Plaintiff APEX.AI, INC.