UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APEX.AI, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>NEIL RICHARD LANGMEAD, an individual; VERIFA, INC., a Massachusetts corporation; and CODECLINIC LLC dba LATTIX, a Massachusetts limited liability company,<br><br>Defendants. | Case No. 23-cv-02230-BLF<br><br>**ORDER VACATING MAY 2, 2024 MOTION HEARING; AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR LEAVE TO FILE COUNTERCLAIMS**<br><br>[Re: ECF 73] |

Before the Court is Defendants' motion under Federal Rule of Civil Procedure 13(e), seeking leave to file counterclaims that matured after Defendants filed their answer. *See* Defs.' Mot., ECF 73. The Court finds the motion to be suitable for decision without oral argument, and therefore the hearing set for May 2, 2024 is VACATED. *See* Civ. L.R. 7-1(b).

The motion is GRANTED IN PART AND DENIED IN PART as discussed below.

**I.   BACKGROUND**

Plaintiff Apex.AI, Inc. ("Apex.AI") filed this action on May 8, 2023, asserting a federal trade secrets claim and related state law claims against Defendants Neil Richard Langmead ("Langmead"), Verifa, Inc. ("Verifa"), and CodeClinic LLC ("CodeClinic"). *See* Compl., ECF 1. Apex.AI claims that Langmead was granted access to Apex.AI's software, source code, and other intellectual property pursuant to a consulting agreement, and that Langmead misappropriated Apex.AI's trade secrets and confidential information for the benefit of himself and his two

1    companies, Verifa and CodeClinic.  On May 10, 2023, this Court issued a temporary restraining
2    order ("TRO") enjoining Defendants from using or disclosing any of Apex.AI's trade secrets or
3    confidential information.  *See* TRO, ECF 12.  The parties thereafter stipulated to issuance of a
4    preliminary injunction containing the same essential terms, which was issued by the Court on May
5    19, 2023.  *See* Preliminary Injunction, ECF 25.  Defendants answered the complaint on June 5,
6    2023, but did not file counterclaims.  *See* Answer, ECF 34.  The Court issued a scheduling order
7    on September 14, 2024, setting November 13, 2023 as the last day to seek amendment of the
8    pleadings.  *See* Order, ECF 39.
9            On December 22, 2023, Defendants filed the present motion, seeking leave to file five
10   counterclaims that matured after the answer was filed:  (1) Intentional Interference With
11   Prospective Economic Advantage; (2)  Tortious Interference With Contractual Relations;
12   (3) Defamation/Libel; (4) Unfair Competition/Unfair Business Practices; and (5) Breach of
13   Contract.  Proposed Counterclaims 1-4 are grounded in allegations that Apex.AI sent copies of the
14   preliminary injunction to Defendants' customers and business partners, along with accusations
15   that Defendants stole Apex.AI's trade secrets.  *See* Prop. Counterclaims ¶¶ 13-65, ECF 73-1.
16   Proposed Counterclaim 5 is for breach of the consulting agreement based on Apex.AI's alleged
17   failure to pay for all services rendered.  *See id.* ¶¶ 66-70.

18   **II.   LEGAL STANDARD**

19           The Court "may permit a party to file a supplemental pleading asserting a counterclaim
20   that matured or was acquired by the party after serving an earlier pleading." Fed. R. Civ. P. 13(e).
21   When ruling on a Rule 13(e) motion, district courts apply the same factors governing leave to
22   amend under Rule 15, which as relevant here are:  (1) bad faith; (2) undue delay; (3) prejudice to
23   the opposing party; and (4) futility.  *See Phan v. Transamerica Premier Life Ins. Co.*, No. 20-CV-
24   03665-BLF, 2023 WL 6048779, at *2 (N.D. Cal. Sept. 14, 2023) (collecting cases).
25           If the Rule 13(e) motion is filed after expiration of the deadline to amend the pleadings, the
26   movant also must show good cause for modification of the scheduling order under Federal Rule of
27   Civil Procedure 16.  *See Phan*, 2023 WL 6048779, at *2; Fed. R. Civ. P. 16(b)(4) ("A schedule
28   may be modified only for good cause and with the judge's consent.").

### III. DISCUSSION

Defendants seek leave to file five counterclaims under Rule 13(e). Apex.AI opposes with respect to Proposed Counterclaims 1-4, which are tort claims based on Apex.AI's communications with Defendants' customers and business partners. Apex.AI does not oppose the filing of Proposed Counterclaim 5 for alleged breach of the consulting agreement. Because the motion was filed on December 22, 2023, after expiration of the November 13, 2023 deadline to seek amendment of pleadings, Defendants must show good cause to modify the case schedule under Rule 16 before the Court considers the merits of the motion under the applicable Rule 15 factors.

#### A. Rule 16 Showing

"The central inquiry under Fed. R. Civ. P. 16(b)(4) is whether the requesting party was diligent." *DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 989 (9th Cir. 2017). "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). Defendants do not specifically address why they were unable to file their Rule 13(e) motion prior to November 13, 2023. However, defense counsel represents that "Defendants' factual investigation is ongoing, and they are bringing this motion promptly, as early in the lawsuit as reasonably possible given the late-maturing nature of Defendants' claims against Plaintiff." Defs.' Mot. at 5. Apex.AI does not challenge Defendants' diligence, and Defendants missed the deadline to seek leave to amend by only six weeks. Under these circumstances, the Court finds that there is good cause to modify the case schedule to allow the motion.

#### B. Rule 15 Factors

Turning to the merits of the motion under the applicable Rule 15 factors, Apex.AI does not assert the existence of bad faith, undue delay, or prejudice, and nothing in the record suggests that those factors are implicated here. Thus, Defendants' motion turns on the remaining factor, futility. Apex.AI contends that permitting Defendants to file Proposed Counterclaims 1-4 would be futile, because they are based on communications falling within California's litigation privilege, codified at California Civil Code § 47(b). Defendants argue that § 47(b) does not apply.

### 1. California's Litigation Privilege

California's litigation privilege "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990). If all of these requirements are met, § 47(b) operates as an absolute privilege, barring all tort claims with the exception of malicious prosecution. *See id.* 215-16. The privilege applies even when the communication is made with actual malice. *See id.* "If there is no dispute as to the operative facts, the applicability of the litigation privilege is a question of law." *Kashian v. Harriman*, 98 Cal. App. 4th 892, 913 (2002). "Any doubt about whether the privilege applies is resolved in favor of applying it." *Id*.

"The privilege is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards." *Action Apartment Assn., Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1241 (2007) (quotation marks and citation omitted). "However, republications to nonparticipants in the action are generally not privileged under section 47(b)." *Susan A. v. Cnty. of Sonoma*, 2 Cal. App. 4th 88, 93 (1991) (citing *Silberg*, 50 Cal. 3d at 219). "Thus, the privilege does not apply where publication is to persons in no way connected with the proceeding." *Id*. However, "the litigation privilege can apply to out-of-court statements to nonparties who have a substantial interest in the outcome of the pending litigation." *Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC*, 814 F. Supp. 2d 1033, 1040 (S.D. Cal. 2011) (quotation marks and citation omitted).

### 2. Application of Litigation Privilege

Apex.AI contends that, under these standards, Defendants' Proposed Counterclaims 1-4 are barred by California's litigation privilege. In the Proposed Counterclaims, Defendants allege that Apex.AI sent emails to Defendants' customers and business partners, including QA Systems, Parasoft, and Asensus Surgical, Inc., informing them of the present litigation, providing a copy of the preliminary injunction entered in this case, and stating that Defendants may have used Apex.AI's trade secrets in work performed on behalf of Defendants' customers. *See* Prop. Counterclaims ¶¶ 13-32. Defendants claim that Apex.AI's conduct disrupted economic

4

1  relationships that Defendants had with third parties (Proposed Counterclaim 1), interfered with
2  contracts Defendants had with third parties (Proposed Counterclaim 2), defamed Defendants
3  (Proposed Counterclaim 3), and constituted unfair competition and unfair business practices
4  (Proposed Counterclaim 4).  Apex.AI asserts that, on their face, these allegations trigger
5  application of § 47(b) under the applicable four-prong test.

### a. First Prong

Under the first prong, the communication at issue must have been made in judicial or quasi-judicial proceedings.  As noted above, the privilege applies not only to statements made during court proceedings, but also to out-of-court statements to nonparties who have a "substantial interest" in the litigation.

In *Weiland*, the district court found the substantial interest requirement satisfied where the plaintiff in a patent infringement suit against a competitor sent a press release about the suit to customers, vendors, and trade publications.  *See Weiland*, 814 F. Supp. 2d at 1037.  The district court dismissed the defendant's counterclaim for interference with prospective business advantage as barred by § 47(b), finding that the recipients of the press release had a substantial interest in the litigation because actual or potential customers of the defendant's accused products could be subject to infringement liability, and those considering business with the defendant would want to know which of the defendant's products might be infringing.  *See id.* at 1041.

Other district courts have found § 47(b) to bar counterclaims based on similar communications regarding pending litigation.  *See, e.g., Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, No. C 12-2582 CW, 2013 WL 368365, at *10-11 (N.D. Cal. Jan. 29, 2013) (applying § 47(b) privilege to dismiss defendant's counterclaims arising from plaintiff's email to customers regarding pending litigation and issuance of injunction); *Sharper Image Corp. v. Target Corp.*, 425 F. Supp. 2d 1056, 1079 (N.D. Cal. 2006) (applying § 47(b) to grant summary judgment for plaintiff on defendant competitor's counterclaims arising from plaintiff's email to retailers and media regarding pending litigation).

For the same reasons, this Court concludes that Defendants' customers and business partners have a substantial interest in this litigation and thus that the first prong is satisfied.

1    Defendants' arguments to the contrary are unpersuasive. Citing *Susan A.*, Defendants
2    argue that their customers and business partners do not have a sufficiently substantial interest in
3    this litigation to satisfy the first prong of the test for application of the privilege. *See Susan A.*, 2
4    Cal. App. 4th 88. *Susan A.* involved statements to the press by a psychologist regarding his
5    evaluation of a minor who was being tried for attempted murder. *See id.* at 92. The minor and his
6    parents sued the psychologist and his employer, the county, for invasion of privacy and related tort
7    claims. *See id.* The trial court granted summary judgment for the psychologist and county,
8    finding that the statements to the press fell within California's litigation privilege. *See id.* at 92-
9    93. The appellate court reversed, noting that "the privilege does not apply where publication is to
10   persons in no way connected with the proceeding," and holding "the press is not connected with
11   the proceeding so as to render section 47(b) applicable." *Id.* at 93-94. That holding has no
12   bearing on the present case, which does not involve a statement to the press. Defendants' reliance
13   on *Argentieri v. Zuckerberg*, 8 Cal. App. 5th 768, 783-85 (2017), is similarly misplaced, as that
14   case also involved a statement to the press, and the appellate court determined that § 47(b) did not
15   apply because the press lacked a substantial interest in the subject matter of the litigation.

16   Defendants argue that the cases supporting application of § 47(b) turned on factual
17   findings regarding the email recipients' substantial interest in the litigation, and assert that this
18   Court does not have a basis to make such a finding at this early stage of the litigation. In *Weiland*
19   and *Ubiquiti*, the district courts applied § 47(b) to dismiss counterclaims at the Rule 12(b)(6)
20   stage, based on the contents of the communications at issue and the alleged status of the third
21   party recipients as customers and potential customers. *See Weiland*, 814 F. Supp. 2d at 1041;
22   *Ubiquiti*, 2013 WL 368365, at *11. Similarly, this Court finds application of § 47(b) to be
23   warranted based on the Proposed Counterclaims' allegations regarding the contents of the emails
24   sent by Apex.AI and the alleged status of the third party recipients as Defendants' customers and
25   business partners.

26           **b.**     **Second Prong**

27   Defendants concede the second prong, under which the communication at issue must have
28   been made by litigants or others authorized by law, since the emails were sent by Apex.AI.

### c. Third and Fourth Prongs

Under the third prong, the communication must have been intended to achieve the object of the litigation, and under the fourth prong, the communication must have some connection or logical relation to the action. It appears on the face of the proposed counterclaims that these requirements are met here. Apex.AI sued Defendants to protect their trade secrets, and the emails informing Defendants' customers and business partners about the preliminary injunction clearly were intended to achieve that object and were logically related to the litigation. *See Pathak v. United States*, No. CV 09-8287-GHK (DTBx), 2010 WL 11596724, at *1 (C.D. Cal. Mar. 16, 2010) ("Any efforts made by Defendants to enforce the injunction order are likewise privileged, since defendants' actions were logically and legally related to the realization of a litigation objective." (quotation marks and citation omitted)).

Defendants contend that Apex.AI's true purpose in sending the emails in question was to damage Defendants' business reputations. Defendants point out that Apex.AI sent the emails to multiple addresses at each recipient company, rather than limiting the emails to the most appropriate company officials. It appears to be Defendants' view that § 47(b) does not apply unless "every human being whose work duties allowed them to access the email address . . . had a substantial interest in this litigation." Defs.' Reply at 5-6. Defendant does not cite any authority for the proposition that each "human being" at the recipient companies must have a substantial interest in the litigation for the privilege to apply, and that position is not supported by the cases discussed herein. Moreover, the litigation privilege applies even if the communication in question was made with actual malice. *See Silberg*, 50 Cal. 3d at 215-16.

The Court concludes that the third and fourth prongs of the test are satisfied.

### d. Conclusion

Having evaluated Defendants' proposed pleading in light of the applicable law on California's litigation privilege, the Court finds that on their face Proposed Counterclaims 1-4 would be barred by the privilege. Accordingly, the Court concludes that allowing Defendants to file Proposed Counterclaims 1-4 would be futile. Defendants' motion therefore is DENIED IN PART as to Proposed Counterclaims 1-4.

1    Defendants' motion is GRANTED IN PART as to Proposed Counterclaim 5, as that
2    portion of the motion is unopposed.

### IV. ORDER

(1) Defendants' Rule 12(e) motion is GRANTED IN PART as to Proposed Counterclaim 5 and DENIED IN PART as to Proposed Counterclaims 1-4;

(2) If Defendants elect to proceed on Proposed Counterclaim 5, they SHALL file their Counterclaim by March 27, 2024;

(3) Leave to file is limited to Proposed Counterclaim 5 – Defendants may not add additional counterclaims without prior leave of the Court; and

(4) This order TERMINATES ECF 73.

Dated: March 13, 2024

_____
BETH LABSON FREEMAN
United States District Judge